UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| FREDERICK EPPICH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   2:25-cv-00522-SDN |
| | ) |
| FEDEX GROUND PACKAGE | ) |
| SYSTEM INC., | ) |
| | ) |
| Defendant. | ) |

## ORDER

Plaintiff Frederick Eppich sued Defendant FedEx Ground Package System Inc. ("FedEx") for unpaid overtime wages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207(a)(1), and Maine state law. ECF No. 1-3 at 10. This matter now comes before the Court on FedEx's motion for partial summary judgment. ECF Nos. 2–5. On February 26, 2026, the parties appeared before the Court for a hearing in part on the motion for summary judgment. For the reasons that follow, the Court **GRANTS IN PART** and **DENIES IN PART** FedEx's motion for partial summary judgment as explained herein.

### STATEMENT OF FACTS

Defendant FedEx is a registered motor carrier with the U.S. Department of Transportation ("DOT") and operates as a motor carrier of property for compensation engaged in interstate and foreign commerce throughout the United States. ECF No. 3 at ¶ 1; ECF No. 13 at ¶ 1. By means of providing their services, FedEx contracts with third-party businesses ("Service Providers" or "ISPs") to provide pickup and delivery services

1

between customers and FedEx's sorting stations. ECF No. 3 at ¶ 3.[1] As required by DOT regulatory requirements on motor carriers, FedEx maintains records pertaining to activity of drivers employed by ISPs, referred to as "scanner data." ECF No. 3 at ¶ 4; ECF No. 13 at ¶ 4. Scanner data reflects, among other things, the time a driver is "on duty," information identifying the vehicle used each day, and the time the driver logs off. ECF No. 3 at ¶ 5; ECF No. 13 at ¶ 5. Critically, the scanner data does not capture the weight of the vehicle operated by the driver; instead, this information may be recovered by cross-referencing the vehicle number against FedEx's internal system. ECF No. 3 at ¶ 6; ECF No. 13 at ¶ 6. If an ISP does not provide information regarding the vehicle number driven by employees, FedEx does not have access to information regarding the vehicle's gross vehicle weight rating ("GVWR"). ECF No. 3 at ¶ 7; ECF No. 13 at ¶ 7.

As part of their relationship with FedEx, individual ISPs enter into an Independent Service Provider Agreement ("Agreement") with FedEx, which states that ISPs have "sole and complete discretion in the staffing, selection, hiring, training, supervision, assignment, hours and days worked, discipline, termination, compensation, benefits, and all other terms and conditions of employment." ECF No. 3 at ¶ 10; ECF No. 13 at ¶ 10. Under the Agreement, ISPs are required to maintain their own employment records of drivers. *Id.* Further, ISPs agree to treat all personnel as their employees for legal purposes and to provide FedEx annual certification of their compliance with any legal obligations, of which FedEx may request proof of at any time. ECF No. 3 at ¶ 11; ECF No. 13 at ¶ 11.

---

[1] Parties dispute whether ISPs are truly "independent businesses," as Mr. Eppich argues the ISPs are instead "intermediary employees operating with FedEx's system and under FedEx's rules." ECF No. 13 at ¶ 3.

Plaintiff Frederick Eppich worked as a delivery driver in Maine for two different ISPs during the claimed damages period: RF Delivery Service, Inc. ("RF") and UML Inc. ("UML"). ECF No. 3 at ¶ 12; ECF No. 13 at ¶ 12. Mr. Eppich also drove for Central Perk, Inc. from July 28, 2021, through August 10, 2023, but raises no overtime damages claim for time worked for Central Perk. ECF No. 3 at ¶ 14; ECF No. 13 at ¶ 14. According to available scanner data, for the relevant time periods, Mr. Eppich drove vehicles with a GVWR of 10,000 pounds or less on 736 days and drove vehicles with an unknown or "heavy" GVWR (larger than 10,000 pounds) on 682 days. ECF No. 3 at ¶ 15; ECF No. 13 at ¶ 15. The 682 "unknown" or "heavy" vehicle days occurred within the following work weeks: January 5, 2016, through July 23, 2016; July 17, 2018, through May 18, 2019; and May 29, 2019, through August 24, 2019. *Id.* Mr. Eppich testified that all ISPs he worked for paid him a "day rate" and that he never spoke to anyone at RF, UML, or Central Perk about overtime pay. ECF No. 3 at ¶¶ 17–18; ECF No. 13 at ¶¶ 17–18.[2] During the relevant period, UML submitted annual compliance certifications to FedEx, pursuant to the Agreement, which confirmed its "compliance with applicable wage-and-hour laws governing 'wage payment [and] overtime.'" ECF No. 3 at ¶ 21; ECF No. 13 at ¶ 21.[3]

## PROCEDURAL HISTORY

On December 21, 2018, a number of plaintiff-employees filed a FLSA class-action lawsuit for overtime wage damages against Defendant FedEx in the Western District of

---

[2] Although Mr. Eppich testified to these facts in his response to FedEx's statement of facts, *see* ECF No. 13 at ¶¶ 17–18, during the hearing, plaintiff's counsel disputed whether Mr. Eppich's testimony accurately reflected his understanding of his pay with respect to overtime wages, *see* ECF No. 55 at 57:13–58:18.

[3] Although Mr. Eppich does not dispute that UML submitted these certifications, he contests their evidentiary value, noting that such attestations "cannot be relied upon as credible proof" that ISPs actually paid him or other Plaintiffs the overtime wages to which they were legally entitled. ECF No. 13 at ¶ 21.

Pennsylvania. ECF No. 1-1 (W.D. Pa. docket sheet). On July 10, 2020, Mr. Eppich filed an opt-in consent form to join the class action against FedEx. *Id*. at 35–36. On July 24, 2024, Mr. Eppich filed his second amended complaint against FedEx, along with eleven other class member plaintiffs, seeking unpaid overtime wages under both the FLSA and Maine state law. *See* ECF No. 1-3. Regarding Mr. Eppich's employment as a delivery driver under FedEx via ISPs, he alleges that "based on the economic realities of the relationship between FedEx and these drivers, it is clear that the delivery drivers working under the intermediary ISPs are also FedEx employees under the FLSA." *Id*. at ¶ 21. Mr. Eppich alleges a variety of other ways in which delivery driver employees like himself are connected to or "controlled" by FedEx, including driving vehicles bearing FedEx's logo and color scheme, working out of FedEx-owned and -managed terminals throughout the country, delivering packages for FedEx customers on FedEx's behalf, and complying with various other FedEx-imposed requirements. *See id*. at ¶¶ 23–29.

On September 29, 2025, the Western District of Pennsylvania granted FedEx's "Motion on Misjoinder, Change of Venue, and Separate Trials," thereby severing each individual plaintiff's claims and transferring them to the district courts located in the plaintiffs' respective places of employment. *See Claiborne v. FedEx Ground Package Sys., Inc.*, No. 18-CV-1698, 2025 WL 2772339 (W.D. Pa. Sept. 29, 2025). Mr. Eppich's case was formally transferred to the District of Maine on October 14, 2025. ECF No. 1.

Mr. Eppich now seeks overtime damages, under both the FLSA and Maine law, for work completed with different ISPs during the following time periods: November 27, 2015, through July 23, 2016 (RF Delivery Service, Inc.) and July 17, 2018, through August

24, 2019 (UML, Inc.).[4] FedEx has moved for partial summary judgment on any overtime damages accruing beyond the FLSA's two-year statute of limitations period, arguing Mr. Eppich cannot establish either entitlement to equitable tolling of his individual claims, or a willful FLSA violation, both of which would extend the statutory limitations period. ECF No. 4 at 9–14. FedEx additionally seeks partial summary judgment for any workweeks in which Mr. Eppich cannot prove he drove "small vehicles" weighing 10,000 pounds or less, which would make him exempt from overtime pay under the "Motor Carrier exemption" ("MCA exemption") of the FLSA. *Id*. at 4–8; *see* 29 C.F.R. § 782.2. FedEx similarly seeks summary judgment on Mr. Eppich's claims for overtime wages under Maine law under the MCA exemption. ECF No. 4 at 15. Finally, FedEx seeks summary judgment on whether Mr. Eppich's compensation constitutes a "flat day" rate and, if so, how to calculate any overtime damages under the applicable federal regulations. *Id*. at 15–19. In response, Mr. Eppich argues there is a genuine dispute of material fact precluding summary judgment on the issues of willfulness of FedEx's purported FLSA violations, whether he drove "light vehicles," and whether he was paid a "flat day" rate. ECF No. 14 at 1–2.

## DISCUSSION

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty*

---

[4] Although Mr. Eppich originally sought overtime damages for work completed for Central Perk, Inc. between July 28, 2021, and August 10, 2023, he no longer seeks any overtime damages for weeks during which he was paid through Central Perk, Inc. ECF No. 14 at 1 n.1; ECF No. 4 at 1.

*Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (quotation modified). A material fact is one that has the potential to determine the outcome of the litigation. *See Oahn Nguyen Chung v. StudentCity.com, Inc.*, 854 F.3d 97, 101 (1st Cir. 2017). A dispute of material fact is genuine if a rational factfinder could resolve it in favor of either party. *See Rando v. Leonard*, 826 F.3d 553, 556 (1st Cir. 2016). The moving party "bears the initial burden of showing that no genuine issue of material fact exists." *Feliciano-Muñoz v. Rebarber-Ocasio*, 970 F.3d 53, 62 (1st Cir. 2020). The burden then shifts to the non-moving party to show "specific facts sufficient to deflect the swing of the summary judgment scythe." *Xiaoyan Tang v. Citizens Bank, N.A.*, 821 F.3d 206, 215 (1st Cir. 2016) (quoting *Mulvihill v. Top-Flite Golf Co.*, 335 F.3d 15, 19 (1st Cir. 2003)).

## I.  Applicable Statute of Limitations

A plaintiff's claim for unpaid overtime wages under the FLSA is subject to a two-year statute of limitations. 29 U.S.C. § 255(a). However, the limitations period for an FLSA overtime claim may be extended to three years for any "cause of action arising out of a[n employer's] willful violation of the FLSA." *Id.* Mr. Eppich opted into the then-pending class action on July 10, 2020. Accordingly, FedEx moves for partial summary judgment on any overtime damages that accrued prior to July 10, 2018— two years prior to that date. Mr. Eppich argues (1) whether an alleged FLSA violation is willful presents a question of fact reserved for trial, and (2) regardless of willfulness, the Court should apply equitable tolling to preserve the entirety of his FLSA claim. *See* ECF No. 14 at 8, 12–15.

### A.  Willfulness

An FLSA violation is considered willful when "the employer either knew or showed reckless disregard for . . . whether its conduct was prohibited." *Walsh v. N. Providence Primary Care Assocs., Inc.*, 537 F. Supp. 3d 195, 202 (D.R.I. 2021) (quoting *McLaughlin*

6

*v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)). Whether an FLSA violation is willful is a mixed question of law and fact. *Reich v. Newspapers of New England, Inc.*, 44 F.3d 1060, 1080 (1st Cir. 1995); *Pineda v. Skinner Servs., Inc.*, No. 16-cv-12217, 2020 WL 5775160, at *11 (D. Mass. Sept. 28, 2020); *see also Acosta Colon v. Wyeth Pharms. Co.*, 363 F. Supp. 2d 24, 29 (D.P.R. 2005) ("Plaintiffs[] are correct in asserting that the determination of their employer's willfulness, or lack thereof, in order to apply the exception to the two[-]year statute of limitation is a question for the trier of fact to decide."). When a party presents "some evidence that, particularly when viewed in the light most favorable to them and resolving all doubts and reasonable inferences in their favor . . . at least supports an inference [of] willfulness . . . it should be left to the trier of fact to make that determination." *Walsh*, 537 F. Supp. 3d at 203; *but see McGrath v. City of Somerville*, 419 F. Supp. 3d 233, 259 (D. Mass. 2019) (rejecting the notion that "failure to investigate compliance with the FLSA can, without more, constitute willfulness").

At this juncture, there is sufficient evidence to support at least an inference that FedEx knew or showed reckless disregard for whether its pay practices complied with the FLSA's overtime requirements, particularly in light of material factual disputes regarding FedEx's control over the function and operation of ISPs and FedEx's status as a "joint employer" of Mr. Eppich. The parties dispute, for example, the extent to which FedEx retains control over ISPs through maintaining and reviewing the employment records of drivers employed by ISPs, conducting regular "wage and hour assessments," and by issuing reports detailing its findings regarding FLSA compliance—including whether ISPs pay overtime wages to drivers and properly record all hours worked by drivers. *See* ECF No. 13 at 11–13; ECF No. 18 at 15–20. The issue of whether FedEx is considered a joint employer of Mr. Eppich likewise remains pending and disputed as FedEx has not moved

7

for summary judgment on the issue. ECF No. 4 at 1 n.3. Mr. Eppich accordingly argues the evidence presented at this stage demonstrates a factfinder could reasonably find that "FedEx knew or showed reckless disregard for whether Plaintiffs were properly paid overtime compensation for all overtime hours worked." ECF No. 14 at 11.

FedEx disagrees and argues the undisputed facts cannot support even an inference of willfulness, "as there is no basis for finding that FedEx knew or disregarded the fact that [Mr.] Eppich allegedly did not receive overtime pay he was owed or that FedEx was his joint employer." ECF No. 4 at 10. FedEx contends it had a "reasonable basis" to conclude it was not Mr. Eppich's joint employer and thus cannot have shown "reckless disregard" for any alleged FLSA violations. *See id*. at 11–12. However, the question of the reasonableness of that determination or of FedEx's knowledge of any alleged FLSA violation rests on weighing of the evidence and credibility determinations, which pose a roadblock for any party seeking summary judgment. *See Velez-Gomez v. SMA Life Assurance Co.*, 8 F.3d 873, 877 (1st Cir. 1993) ("At the summary judgment stage, however, there is no room for credibility determinations, no room for the measured weighing of conflicting evidence, no room for the judge to superimpose h[er] own ideas of probability and likelihood." (quotation modified)). Because the record supports at least an inference of willfulness, the Court concludes the issue of willfulness and applicable statute of limitations are factual questions reserved for trial. Accordingly, FedEx's motion for partial summary judgment is **DENIED** with respect to any alleged unpaid overtime wages accruing after July 10, 2017—three years prior to the date Mr. Eppich joined this suit.

## B.    Equitable Tolling

The remainder of Mr. Eppich's FLSA claim seeking unpaid overtime wages from prior to July 10, 2017, falls outside the FLSA's statute of limitations regardless of

8

willfulness. He argues the Court should apply equitable tolling of the statute of limitations to preserve the entirety of his FLSA claim, based primarily on a previous ruling in this matter from the Western District of Pennsylvania in this matter which held that "in light of the unique procedural history" of the case, "sound legal principles as well as the interests of justice warrant[ed] equitably tolling the notice period to preserve the claims of potential op-ins." *Sullivan-Blake v. FedEx Ground Package Sys., Inc.*, No. CV 18-1698, 2019 WL 4750141, at *6 (W.D. Pa. Sept. 30, 2019) (quotation modified). In response, FedEx argues the order tolling the notice period was designed only to provide notice to any future plaintiffs of their potential claims and does not extend to equitable tolling of a plaintiff's underlying FLSA claim, which it argues is a "merits-based determination that depends on each opt-in [plaintiff']s individual circumstances." ECF No. 4 at 13. FedEx further contends Mr. Eppich's individual circumstances do not warrant equitable tolling of his claims beyond the statutory period, as he cannot demonstrate either unfair prejudice or the requisite due diligence in pursuing his claim. *See* ECF No. 17 at 10–12.

The Court first addresses Mr. Eppich's argument that the equitable tolling of the notice period ordered by the Western District of Pennsylvania should be extended to the tolling of his individual FLSA claim. Mr. Eppich specifically contends the Court "need not conduct a new tolling analysis" of his FLSA claim as it was "already determined" by the Pennsylvania district court's prior order. ECF No. 47 at 3. The First Circuit has made clear that the applicability of equitable tolling to a plaintiff's civil claim is determined at an individual level. *Bah v. Enter. Rent-A-Car Co. of Bos.*, 699 F. Supp. 3d 133, 142 (D. Mass. 2025), *aff'd sub nom.*, *Kwoka v. Enter. Rent-A-Car Co. of Bos.*, 141 F.4th 10, 12 (1st Cir. 2025) (collecting district court cases declining to adopt a categorical, non-individualized approach to equitable tolling); *see also Gardner v. Fallon Health & Life Ins. Co., Inc.*, No.

9

CV 19-40148, 2021 WL 4459525, at *6 (D. Mass. Sept. 29, 2021) ("The issue of equitable tolling often arises in FLSA cases because the filing of a collective action does not toll the limitations period for opt-in plaintiffs until the opt-in plaintiffs *actually opt-in*.") (emphasis added). Mr. Eppich has not cited any authority to support the concept that a prior court's ruling tolling the notice period for opt-in plaintiffs should be categorically adopted to now toll the statute of limitations for his individual FLSA and Maine state law claims. Indeed, in tolling the notice period of any potential opt-in plaintiffs, the Western District of Pennsylvania specifically declined to decide whether the named plaintiff's individual claim was subject to equitable tolling "at this juncture." *Sullivan-Blake*, 2019 WL 4750141, at *6 n.5. Accordingly, the Court rejects Mr. Eppich's argument that the prior district court ruling entitles him to equitable tolling of his individual claims.[5]

It then follows that to preserve the remainder of his claims for overtime damages accruing prior to July 10, 2017, Mr. Eppich must demonstrate that he is entitled to equitable tolling based on the circumstances of his individual claims. Because the FLSA itself does not reference tolling whatsoever, it is presumed that the FLSA allows for tolling in accord with "background equitable tolling principles," *Kwoka*, 141 F.4th at 20. (quotation modified), meaning that Mr. Eppich must demonstrate "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way," *Pineda v. Whitaker*, 908 F.3d 836, 841 (1st Cir. 2018) (quotation modified). Essentially, the "equitable tolling doctrine extends statutory deadlines in extraordinary circumstances for parties who were prevented from complying with them through no fault

---

[5] Indeed, to hold otherwise would mean similar FLSA plaintiffs no longer have to prove the issue of "willfulness" to establish the extended three-year statute of limitations; instead, plaintiffs could rely on a prior ruling tolling the notice or certification period to ensure tolling of their individual claims without regard to the issue of willfulness.

or lack of diligence of their own." *Neves v. Holder*, 613 F.3d 30, 36 (1st Cir. 2010). In analyzing a plaintiff's due diligence, the First Circuit has recognized five factors to guide the analysis: "(1) lack of actual notice of the filing requirement; (2) lack of constructive knowledge of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the defendant; and (5) a plaintiff's reasonableness in remaining ignorant of the filing requirement." *Farris v. Shinseki*, 660 F.3d 557, 564 (1st Cir. 2011) (quoting *Mercado v. Ritz-Carlton San Juan Hotel, Spa & Casino*, 410 F.3d 41, 48 (1st Cir. 2005)).

Mr. Eppich's primary argument for equitable tolling, aside from pointing to the prior order tolling the notice period, is that tolling would prevent any "unfair prejudice" against him and that the Court should impute the due diligence of the original named plaintiff, Mr. Horace Claiborne, to Mr. Eppich's individual claims. *See* ECF No. 14 at 14–15. In response, FedEx contends that the due diligence of Mr. Claiborne may not be imputed and that Mr. Eppich has produced no evidence demonstrating his own due diligence or otherwise "exceptional circumstances" warranting tolling. ECF No. 17 at 9–11 ("Plaintiff[] do[es] not even argue [he] exercised due diligence.").

"Where questions of fact are presented, statute of limitations defenses are ordinarily submitted to the jury." *Meléndez-Arroyo v. Cutler-Hammer de P.R. Co.*, 273 F.3d 30, 38 (1st Cir. 2001). However, the "mere fact that a party asserts such equitable claims does not foreclose granting a motion for summary judgment." *Benitez-Pons v. Com. of P.R.*, 136 F.3d 54, 64 (1st Cir. 1998). At this juncture, Mr. Eppich has not presented any evidence regarding his due diligence or any "exceptional circumstance" often recognized by courts to warrant the need for equitable tolling.[6] In his supplemental

---

[6] Examples of "exceptional circumstances" that have prompted courts to invoke equitable tolling include: an employer materially misleading an employee about his right to bring suit for denied

briefing, Mr. Eppich appears to argue the Court should exercise tolling to prevent unfair prejudice to him based on his reliance on the prior Western District of Pennsylvania ruling tolling the notice period. *See* ECF No. 47 at 4 (citing *Pineda v. Skinner Services, Inc.*, 2020 WL 5775160, at \*\*10–11).

*Pineda* involved FLSA plaintiffs seeking equitable tolling based upon their reliance on a prior ambiguous, oral order by the same court granting plaintiffs' motion with multiple requests for relief, including the application of equitable tolling of their individual claims. *See Pineda*, 2020 WL 5775160, at \*10. The *Pineda* court found that because the court's oral order was unclear as to whether it had granted every aspect of the plaintiff's motion,[7] "it was reasonable for plaintiffs to believe that the motion was granted in its entirety, and to rely on that interpretation in determining when the limitations period expired," and thus applied equitable tolling of plaintiffs' individual FLSA claims. *Id.* Unlike in *Pineda*, the prior order tolling the notice period in this matter is not ambiguous. Even further, it does not follow that Mr. Eppich could have reasonably relied on an order entered in a case of which he was not party to, and thus not subject to the court's jurisdiction, to determine the accurate limitations period for his FLSA claims. Because Mr. Eppich has not presented a genuine question or dispute of material fact regarding equitable tolling, the Court concludes he has not satisfied the requisite standard

---

retirement benefits against employer, *see Ortega Candelaria v. Orthobiologics LLC*, 661 F.3d 675, 681 (1st Cir. 2011), an employer's failure to post the required FLSA notices regarding employees' overtime rights, *see Perez v. Shuck's Me. Lobster LLC*, No. 14-cv-00348, 2016 WL 6304674, at \*11 (D. Me. Oct. 27, 2016), and litigation delays from the conditional certification process of a class action, *Pineda v. Skinner Services, Inc.*, 2020 WL 5775160, at \*11. Mr. Eppich has not alleged anything similar occurred in the instant case to justify the application of equitable tolling.

[7] "The question here is whether the Court granted all aspects of plaintiffs' motion (including the portion that requested tolling) when it orally granted the motion . . . unfortunately, it did not make clear exactly what it was doing and why." *Pineda*, 2020 WL 5775160, at \*10.

to permit equitable tolling of his individual FLSA claims beyond the statutory period.[8] Accordingly, FedEx's motion for partial summary judgment is **GRANTED IN PART** with respect to overtime damages accruing prior to July 10, 2017.

## II.     TCA or "Small Vehicle" Exception

FedEx next contends the Court should grant summary judgment for all overtime damages claimed for weeks in which Mr. Eppich did not drive "small" vehicles (weighing under 10,000 pounds) in pursuit of his delivery duties, or in which the weight of the vehicle driven by Mr. Eppich was unknown.

The FLSA generally requires all employers to pay salaried employees overtime for any hours worked over forty in a single workweek. 29 U.S.C. § 207(a)(1). Federal law, however, allows for an exemption to this general rule for certain transportation workers whose hours and safety are regulated by the Department of Transportation. 29 U.S.C. § 213(b)(1) (the "MCA exemption"). Under the MCA exemption, an employee does not receive overtime pay if (1) the employee works for a "motor carrier" (a company that provides motor vehicle transportation for pay);[9] and (2) the employee's job duties directly affect the safety of operating motor vehicles in interstate and foreign commerce (i.e., delivery drivers). *See Noll v. Flowers Foods Inc.*, 442 F. Supp. 3d 345, 358–59 (D. Me.

---

[8] The Court likewise rejects Mr. Eppich's argument that the due diligence of named-plaintiff Mr. Claiborne may be imputed to establish Mr. Eppich's diligence because governing precedent requires each plaintiff seeking equitable tolling to make an individualized showing of his own due diligence or exceptional circumstances to warrant equitable tolling. *Kwoka*, 141 F.4th at 20, 25; *see also Bah v. Enter. Rent-A-Car Co. of Bos., LLC*, C.A. No. 17-12542, 2022 WL 2333697, at *2 (D. Mass. June 28, 2022) ("After putative opt-in [FLSA] plaintiffs are identified, the court will decide individually whether the doctrine of equitable tolling operates to permit each to maintain his or her claim despite the usual two-year or three-year statute of limitations.").

[9] The MCA defines a "motor carrier" as "a person providing motor vehicle transportation for compensation." 49 U.S.C. § 13102(14). The parties do not dispute that FedEx and the ISPs for which Mr. Eppich drove qualify as "motor carriers" for purposes of the MCA exemption.

2020) (*"Noll I"*); *see also* 29 C.F.R. § 782.2(a). Here, both FedEx and the ISPs for which Mr. Eppich provided services are "motor carriers" for the purposes of the MCA exemption, and Mr. Eppich performed duties affecting both interstate and foreign commerce through his duties as a delivery driver. Thus, Mr. Eppich fits within the MCA exemption and, without more, is not entitled to FLSA overtime wages.

The Technical Corrections Act ("TCA") carves out an exception to the MCA exemption, where certain employees otherwise exempt from overtime pay may still qualify for overtime pursuant to the "small vehicle" exception. Under the TCA, a "covered employee" is an employee who: (1) works for a qualified motor carrier; (2) does work, in whole or in part, affecting the safety of operating motor vehicles weighing 10,000 pounds or less in interstate or foreign commerce; and (3) performs duties on motor vehicles weighing 10,000 pounds or less. *See* SAFETEA-LU Technical Corrections Act, Pub. L. No. 110-244, § 306(c), 122 Stat. 1620 (2008); *see also Noll I*, 442 F. Supp. 3d at 362–64 (discussing the "TCA" or "small vehicle exception"). If a worker is a "covered employee" under the TCA exception, the MCA exemption does not apply, and the worker is subject to the general FLSA overtime rule providing for overtime pay for all hours worked over forty in a single workweek. Thus, a plaintiff may still succeed on a claim for overtime wages by establishing the applicability of the TCA exception to the MCA exemption.

FedEx seeks summary judgment on damages for all weeks in which Mr. Eppich drove vehicles weighing over 10,000 pounds (i.e., not subject to the small vehicle exception) or where the weight of the vehicle is unknown. As part of its relationship with ISPs, FedEx maintains records pertaining to activity of drivers employed by ISPs, referred to as "scanner data." ECF No. 3 at ¶ 4; ECF No. 13 at ¶ 4. Scanner data reflects information identifying the vehicle driven by an employee each day but critically does not capture the

14

weight of the vehicle operated by the driver. ECF No. 3 at ¶ 5; ECF No. 13 at ¶ 5. A vehicle's weight is sometimes recoverable by cross-referencing the vehicle number against FedEx's internal database. ECF No. 3 at ¶ 6; ECF No. 13 at ¶ 6. If an ISP does not provide information about the vehicle's weight, however, FedEx does not have access to that information. ECF No. 3 at ¶ 7; ECF No. 13 at ¶ 7. Here, the available scanner data demonstrates that Mr. Eppich drove "small vehicles" (weighing under 10,000 pounds) for 736 out of 1,364 days in which he delivered packages for ISPs. For the remaining 682 days, Mr. Eppich either drove a heavy vehicle (weighing over 10,000 pounds) or a vehicle with an unknown GVWR.[10] FedEx thus argues that because Mr. Eppich is unable to proffer sufficient evidence to establish a genuine dispute of material fact as to whether he drove small vehicles during each of the weeks in which he seeks overtime damages, it is entitled to partial summary judgment on those portions of his claims.

Within the summary judgment context, the First Circuit has not yet "addressed which party has the burden of proving application of the TCA exception to the MCA exemption." *Noll I*, 442 F. Supp. 3d at 363 (concluding "it is most reasonable" to place burden on plaintiffs to show duties they performed in vehicles affected interstate commerce). During the hearing in the instant case, FedEx relied on both *Noll* and a District of Massachusetts case, *Roy v. FedEx Ground Package Systems, Inc.*, No. 17-cv-30116, 2024 WL 1346999 (D. Mass. Mar. 29, 2024), to argue the burden of proving eligibility under the TCA exception is most appropriately placed on the plaintiff-employee. ECF No. 55 at 16:7–25. However, *Noll* is inapposite because both the initial

---

[10] The specific weeks in which the GVWR of the vehicle driven by Mr. Eppich is unknown are January 5, 2016, through July 23, 2016; July 17, 2018, through May 18, 2019; or May 29, 2019, through August 24, 2019. ECF No. 4 at 6.

decision in *Noll I* and the subsequent decision in the same case addressed the question of whose burden it is to establish that vehicles driven by the employee affected interstate commerce—an issue of which the instant parties do not dispute. *See Noll I*, 442 F. Supp. 3d at 363; *Noll v. Flowers Foods, Inc.*, 478 F. Supp. 3d 59, 63 (D. Me. 2020) ("*Noll II*"). The *Roy* decision did involve a similar issue of unknown vehicle weight but extended *Noll*'s allocation of the burden to a materially different question: which party must prove the weight of the vehicles in an employer-controlled fleet for purposes of the TCA exception. *See Roy,* 2024 WL 1346999, at *9–10. This Court declines to follow *Roy* on this point. Neither *Noll I* nor *Noll II* articulated a rationale for placing on an individual employee the burden of producing information about vehicle weight that is generated, stored, and controlled by the employer and its contractors.

Where the issue of applicability of the TCA exception hinges on the availability of information regarding the weight of vehicles driven by an employee, it seems at odds with the purpose and spirit of the FLSA to preclude the recovery of overtime wages based on an employer's missing or incomplete records. The record in this case demonstrates that FedEx maintains a database of "scanner data" pertaining to drivers employed by ISPs, including information identifying the vehicle driven by employees each day. ECF No. 3 at ¶¶ 4–6; ECF No. 13 at ¶¶ 4–6. While the scanner data do not capture the weight of vehicles, FedEx may recover this information by cross-referencing the vehicle number provided by ISPs within their internal system. ECF No. 3 at ¶ 6; ECF No. 13 at ¶ 6. During the hearing, both parties argued the opposing party could have requested information from the ISPs regarding the weight of vehicles used by Mr. Eppich during weeks in which the weight remains unknown. *See* ECF No. 55 at 12:2–9; 19:1–11; 41:18–42:3. It is not entirely clear from the record why the ISPs employing Mr. Eppich supplied information

16

regarding the vehicle number to FedEx for some weeks but declined to on other weeks.[11] Nevertheless, the Court finds it dubious—particularly in the context of an overtime wage dispute—to suggest the plaintiff-employee would be in a better position to retain and acquire such information rather than his employer, a large and well-resourced corporation that already maintains a database for this precise type of information. To hold otherwise and place the burden on the plaintiff to produce such information would create a clear incentive for employers to not retain any records regarding vehicle weight, thereby insulating themselves against any future overtime claims. Such a result cannot be reconciled with "the FLSA's purpose of protecting workers from substandard wages." *Wilkinson v. High Plains, Inc.*, 297 F. Supp. 3d 988, 994 (D.N.D. 2018).

Federal FLSA regulations already require employers to maintain records reflecting, inter alia, the total hours worked each week by the employee, the total wages paid each week, and extra (overtime) pay for any hours worked in excess of forty. *See* 29 C.F.R. § 552.110(a). In other FLSA wage cases, courts have employed a burden-shifting scheme regarding proof of unpaid wages where an employer's records are inaccurate or incomplete "to prevent an employer from capitalizing on its failure to maintain records." *See, e.g.*, *O'Brien v. Town of Agawam*, 482 F. Supp. 2d 115, 119 (D. Mass. 2007). Similar reasoning applies here to avoid incentivizing employers to maintain incomplete or inaccurate records concerning vehicle weights as relevant to the TCA exception.

---

[11] During the hearing, FedEx's counsel appeared to suggest the missing weeks of information regarding a vehicle's GVWR were due, at least in part, to the ISPs' use of rental vehicles which were not subject to the "same information reporting requirements." *See* ECF No. 55 at 10:5–16. The precise nature of these "reporting requirements" is unclear, but it remains clear at least that the ISPs were subject to some form of information-sharing and reporting requirement regarding the vehicles driven by employees.

The Court likewise rejects FedEx's estoppel argument. FedEx contends Mr. Eppich cannot now argue that the vehicles he drove during the "unknown" weeks may have weighed under 10,000 pounds because the prior plaintiff-class took the position that opt-in plaintiffs who could not show they drove a "small vehicle" for at least one percent of their employment should be dismissed from the class action. ECF No. 4 at 7. That earlier position, however, addressed only whether potential opt-in plaintiffs could demonstrate that they operated small vehicles for more than a de minimis (i.e. one percent) portion of their employment. *See Oddo v. Bimbo Bakeries U.S.A., Inc.*, 391 F. Supp. 3d 466, 474 (E.D. Pa. 2019) (concluding, for the purposes of the TCA exception, that plaintiffs satisfied the de minimis threshold by demonstrating they drove small vehicles for more than one percent of the relevant period). Here, it is undisputed that Mr. Eppich drove small vehicles for over half of his employment. ECF No. 3 at ¶ 15; ECF No. 13 at ¶ 15. Given that record, his current argument—that he may have driven small vehicles during some of the remaining "unknown" weeks—is not inconsistent with the position previously advanced on behalf of the class.

Accordingly, for the reasons described herein, and when drawing all reasonable inferences in the light most favorable to Mr. Eppich as the nonmoving party, the Court concludes that a genuine dispute of material fact exists as to the weight of the vehicles driven by Mr. Eppich for the weeks in which the vehicle's GVWR is either missing or unknown. FedEx's motion for partial summary judgment as to overtime damages for those weeks is **DENIED**.

### III.    Maine State Law Claims

Mr. Eppich seeks overtime damages pursuant to Maine state law in addition to his FLSA claims. ECF No. 1-3 at 10; *see* 26 M.R.S.A § 664(3) ("An employer may not require

an employee to work more than 40 hours in any one week unless 1 1/2 times the regular hourly rate is paid for all hours actually worked in excess of 40 hours in that week."). For purposes of the instant case, the parties do not identify any material difference between the substantive overtime protections afforded by Maine law and those provided by the FLSA. FedEx thus seeks summary judgment on Mr. Eppich's state law claims on the same grounds it advances with respect to his FLSA claims. ECF No. 4 at 15. Because the parties' arguments regarding Mr. Eppich's federal and state overtime claims do not meaningfully differ, *see id.*; ECF No. 14 at 16; ECF No. 17 at 12, the Court applies the same analysis here. The only difference in analysis is with respect to the applicable statute of limitations.

Unlike the FLSA, all Maine civil actions, unless otherwise specified, are subject to a six-year statute of limitations after the cause of action accrues. *See* 14 M.R.S.A. § 752. All of Mr. Eppich's alleged overtime damages accrued within six years of July 10, 2020, the date he opted in to the federal lawsuit. Accordingly, none of Mr. Eppich's state law claims for overtime wages are barred by the statute of limitations and FedEx's motion for partial summary judgement with respect to these state law claims is **DENIED**.

### IV.    Damages Calculation Method

FedEx additionally seeks summary judgment on the legal determination of the proper method used to calculate Mr. Eppich's alleged overtime damages. ECF No. 4 at 15; *see* Fed. R. Civ. P. 56(a) (allowing a party to move for summary judgment on "part of [a] claim or defense"). Specifically, FedEx contends that Mr. Eppich has previously admitted he was paid a flat "day rate,"[12] meaning his "regular rate" of pay should be calculated pursuant to 29 C.F.R. § 778.112. ECF No. 17 at 13; *see* 29 CFR § 778.112 (a day rate

---

[12] FedEx points to Mr. Eppich's prior deposition and his admission that all ISPs he worked for paid him a "day rate." ECF No. 3 at ¶ 17; ECF No. 13 at ¶ 17.

employee "is paid a flat sum for a day's work or for doing a particular job, without regard to the number of hours worked in the day or at the job"). Under this method, a day rate employee's "regular rate is determined by totaling all the sums received at such day rates or job rates in the workweek and dividing by the total hours actually worked." *Id.* According to FedEx, Mr. Eppich would then be entitled to extra half-time pay for all hours worked in excess of forty hours per week. *Id.*

Mr. Eppich disagrees and instead argues that, because there was no explicit agreement between himself and any ISP (or FedEx) which "clearly stated his flat pay covered all hours worked in a week," *see* ECF No. 14 at 18, his regular rate of pay should be calculated pursuant to 29 C.F.R. § 778.109–which divides an employee's total compensation in a workweek "by the total number of hours actually worked by him in that workweek for which such compensation was paid," 29 C.F.R. § 778.109. Following this calculation of his "regular rate" of pay, Mr. Eppich's overtime compensation would then be calculated "at a rate not less than *one and one-half times* the regular rate at which he is employed," 29 U.S.C. § 207(a)(1) (emphasis added), rather than the one-half rate proposed by FedEx.

Within the context of FLSA overtime cases, courts have declined to grant summary judgment on the appropriate damages calculation method and an employee's regular rate, concluding such questions are "premature" at the summary judgment stage when factual disputes remain regarding the employer's underlying liability. *See, e.g.*, *Clark v. Cap. Vision Servs., LLC*, No. 22-CV-10236, 2024 WL 3458525, at *22 (D. Mass. July 18, 2024); *see also Newman v. Advanced Tech. Innovation Corp.*, 749 F.3d 33, 37 (1st Cir. 2014) (concluding an employee's regular rate of pay "is a fact question"). Accordingly, the Court declines to reach a legal determination on the appropriate damages calculation method

20

under the FLSA pending the outstanding questions of material fact relating to FedEx's liability to Mr. Eppich, if any. FedEx's motion for partial summary judgment with respect to the proper method of damages calculations is **DENIED**.

**CONCLUSION**

For the foregoing reasons, FedEx's motion for partial summary judgment, ECF No. 2, is **GRANTED IN PART** and **DENIED IN PART**. Regarding the applicable statute of limitations, FedEx's motion is **GRANTED** with respect to any FLSA claim for overtime wages accruing prior to July 10, 2017. FedEx's motion is **DENIED** with respect to any weeks in which the weight of the vehicle driven by Mr. Eppich in the course of his employment is currently unknown. FedEx's motion for partial summary judgment is **DENIED** with respect to Mr. Eppich's claims for overtime wages under Maine state law and with respect to the proper calculation method of any potential damages. Finally, FedEx's motion for summary judgment is **GRANTED** with respect to any claims for overtime damages from Mr. Eppich's employment with Central Perk, Inc.

**SO ORDERED.**

Dated this 15th day of May, 2026.

/s/ Stacey D. Neumann
**UNITED STATES DISTRICT JUDGE**

21