UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| FREDERICK EPPICH,<br><br>Plaintiff,<br><br>v.<br><br>FEDEX GROUND PACKAGE SYSTEM INC.,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | 2:25-cv-00522-SDN |

**ORDER ON MOTION TO EXCLUDE EXPERT WITNESSES**

Plaintiff Frederick Eppich sued Defendant FedEx Ground Package System Inc. ("FedEx") for unpaid overtime wages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207(a)(1), and Maine state law. ECF No. 1-3 at 10. This matter now comes before the Court on Mr. Eppich's motion to strike and exclude two of FedEx's experts from testifying at trial. ECF No. 37. On February 26, 2026, the parties appeared before the Court for a hearing in part on Mr. Eppich's motion.[1] For the reasons that follow, the Court **GRANTS IN PART** and **DENIES IN PART** Mr. Eppich's motion to exclude the experts' reports and testimony at trial as explained herein.

**BACKGROUND[2]**

In advance of trial, FedEx has noticed two different expert witnesses to offer testimony on multiple topics, including among others, the business relationship between

---

[1] Following the Court's order on partial summary judgment, ECF No. 69, the Court granted parties' joint motion to stay decisions on all pending motions while parties engaged in mediation and potential resolution of the case, ECF No. 77. On September 15, 2026, the parties submitted a joint status report informing the Court that mediation had not led to resolution of the case and seeking a lift of the stay and placement on the November 2026 trial list. ECF No. 79. The Court granted the parties' request shortly thereafter. ECF No. 80.

[2] The Court incorporates by reference the more extensive recitation of facts previously enumerated in its order on FedEx's motion for partial summary judgment. ECF No. 69.

FedEx and its independent contractors, referred to as Independent Service Providers ("ISPs"), the structure and operation of ISPs generally, industry norms around the use of ISPs, and the requirements imposed on FedEx from federal motor carrier safety regulations as it relates to FedEx's control over ISPs.

The first expert, Mr. Jack Van Steenburg, is FedEx's retained expert on federal motor carrier safety regulations and compliance. ECF No. 38-1 at 3. Mr. Van Steenburg is the former Executive Director and Chief Safety Officer of the U.S. Department of Transportation Federal Motor Carrier Safety Administration and has spent over forty years working in the field of motor carrier safety. *Id.* at 3–4. In Mr. Van Steenburg's expert report, *see* ECF No. 37-3, he offers various opinions on the nature of federal safety regulations generally and FedEx's duty to comply with them, including but not limited to:

- "Motor carriers like FedEx are bound by the [Federal Regulations]" and thus bear responsibility for complying with the federal safety standards. *Id.* ¶ 9.
- "FedEx [is] responsible for having adequate, appropriate safety management controls in place, such as driver qualification controls." *Id.* ¶ 10.
- "FedEx's use of independent contractors, such as Service Providers, is common in the transportation industry and recognized by the [Federal Regulations]," and the Department of Transportation itself outsources work to contractors. *Id.* ¶ 18.
- FedEx's agreements with ISPs "are consistent with many [Federal Regulation] safety requirements," and "it is clear that FedEx's efforts to ensure regulatory compliance necessitated the assistance of" the ISPs. *Id.* ¶ 19.

The second expert, Professor Daniel Spulber, is FedEx's expert regarding the "economics of contracting in the U.S. package delivery industry and the broader economy and its economic implications for individuals employed to drive for ISPs." ECF No. 38-1 at 5. Mr. Spulber holds multiple advanced degrees in the field of economics, has taught at multiple institutions on the topic, and has published 14 books and numerous articles in

academic journals and law reviews. *See id.* at 5–6. In Mr. Spulber's expert report, *see* ECF No. 37-4, he offers various opinions on the nature of business relationship between FedEx and ISPs and industry norms regarding the use of ISPs or similar contractors, including but not limited to:

- ISPs are "for-profit corporations" that "hire and manage their own employees" as well as "obtain and manage their own capital equipment." *Id.* ¶ 13.
- "Most of FedEx[‘s] competitors have contracted with ISPs to deliver packages, and FedEx[‘s] contracting with ISPs thus conforms to industry norms." *Id.*
- "Outsourcing through contracts such as FedEx[‘s] business relationships with ISPs are fundamental to the efficient organization of business throughout the U.S. economy." *Id.*
- Economic analysis establishes that "making FedEx [] a second employer" would impede the ISPs' ability to hire and manage their own employees, "increase transaction costs, be contrary to the ISPs' contractual arrangements with FedEx [], and ultimately create fewer jobs." *Id.*

Mr. Eppich seeks to exclude the testimony of both expert witnesses as consisting of "irrelevant legal conclusions," arguing that neither FedEx's motive for relying on ISPs or its duty to comply with federal safety regulations is relevant to the primary issue at trial: whether FedEx is considered a joint employer of Mr. Eppich, and thus liable for overtime damages under the FLSA. *See* ECF No. 43-1 at 10–13. In sum, FedEx seeks to admit both expert reports and testimony at trial as reliable and helpful to the jury, including the expert's analysis of the agreements between FedEx and ISPs, the federal motor carrier safety regulations that apply to FedEx, and the overall "economic realities" of the relationship between FedEx and ISPs. *See* ECF No. 38-1 at 10–11, 14. With respect to Mr. Van Steenburg, FedEx argues his testimony regarding federal safety regulations is relevant and necessary to refute Mr. Eppich's argument that certain aspects of FedEx's

control over ISPs indicates they should be considered joint employers of Mr. Eppich for the purposes of overtime wages. *Id.* at 11–13. With respect to Mr. Spulber, FedEx raises similar arguments as to the relevancy of his testimony, namely that Mr. Spulber's analysis of the agreements between FedEx and ISPs and factual information about ISPs' business operations are helpful to the jury and relevant to refuting Mr. Eppich's arguments on the structure of ISPs and their relationship with FedEx. *Id.* at 14. FedEx further notes that "[d]epending on how [Mr. Eppich] ultimately present[s] . . . [his] case[] at trial, FedEx's use of its experts could be substantially narrowed." *Id.* at 15.

**DISCUSSION**

The admissibility of expert testimony is governed by Federal Rule of Evidence 702, which provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Rule 702 "assigns a 'gatekeeping role for the judge' to determine that 'an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Martínez v. United States*, 33 F.4th 20, 24 (1st Cir. 2022) (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993)). The trial court's "overarching concern is on the 'evidentiary relevance and reliability' of the proposed testimony," with expert testimony amounting to speculation failing to meet the relevant standard. *See Seahorse*

*Marine Supplies, Inc. v. P.R. Sun Oil Co.*, 295 F.3d 68, 81 (1st Cir. 2002) (quoting *Daubert*, 509 U.S. at 595). Expert testimony is not permitted when its subject "is well within the bounds of a jury's ordinary experience" and thus has little probative value. *United States v. Pires*, 138 F.4th 649, 667 (1st Cir. 2025) (quotation modified). The court's determination of whether the contents of an expert's testimony is "within the realm of lay-knowledge is guided by a common-sense inquiry." *United States v. Middleton*, 176 F.4th 90, 99 (1st Cir. 2026) (quotation modified).

### A. Testimony on the Structure and Operation of ISPs and their Relationship to Motor Carriers Like FedEx

The Court starts by finding that both experts offered by FedEx are qualified under Rule 702 based upon their experience and specialized knowledge regarding the subject matter at hand. The question is whether that specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." *Id.* Although experts "may not assist the jury by expounding upon the law," expert testimony on the structure and operation of ISPs could be both relevant and helpful to the jury in understanding ISPs in general and their relationship to motor carriers such as FedEx. *See Ji v. Bose Corp.*, 538 F. Supp. 2d 354, 357–58 (D. Mass. 2008) (finding the "line between testimony regarding what the law requires and testimony describing how an industry practice typically operates is not always clear," and holding the latter category of expert testimony admissible) (quotation modified). As such, subject to further development before or at trial, the Court will allow such testimony. [3]

[3] The experts will not, of course, be permitted to testify at trial to the ultimate conclusion of whether FedEx was indeed Mr. Eppich's joint employer; in any event, FedEx does not appear to suggest they should be.

### B. Testimony on Federal Safety Regulations

To determine whether FedEx can be considered Mr. Eppich's joint employer under the FLSA, courts "look to the 'economic reality' of the relationship between the alleged employee and alleged employer and whether that relationship demonstrates dependence." *Scantland v. Jeffry Knight, Inc.*, 721 F.3d 1308, 1311 (11th Cir. 2013); *see also Bartels v. Birmingham*, 332 U.S. 126, 130 (1947) ("[E]mployees are those who as a matter of economic reality are dependent upon the business to which they render service."). Federal regulations provide six factors[4] to guide an assessment, under the totality of the circumstances, of the "economic realities of the working relationship and the question of economic dependence." 29 C.F.R. § 795.110(a)(2). One factor of particular relevance here is the "nature and degree of control," which "considers the potential employer's control, including reserved control, over the performance of the work and the economic aspects of the working relationship." *Id.* § 795.110(b)(4).

To that effect, Mr. Eppich appears to argue that FedEx's model utilizing ISPs and its retention of control over various aspects of ISP operations via their operating agreement services are evidence of FedEx's status as Mr. Eppich's joint employer. *See* ECF No. 43-1 at 1 (ISP operating agreements "memorialized FedEx's control over Plaintiff['s] employment and work"); ECF No. 1-3 ¶ 27 ("FedEx micromanages the manner in which Plainitff[] and other delivery drivers working under ISPs perform their work."). In response, FedEx argues its proposed expert testimony is necessary to both "correct

---

[4] The six factors enumerated in 29 C.F.R. § 795.110(a)(2) are as follows: the worker's "opportunity for profit or loss depending on managerial skill," "investments by the worker and the potential employer," the "degree of permanence of the work relationship," the "nature and degree of control" by the employer over the worker, the "extent to which the work performed is an integral part of the employer's business," the worker's "skill and initiative," and any additional factors deemed relevant. 29 C.F.R. § 795.110(b).

Plaintiff['s] mischaracterization of evidence as FedEx's independent efforts to control" that are instead established by federal regulations, and to address Plaintiff's purported characterization of FedEx's "legitimate and commonly utilized business model" as instead a "scheme" to "cheat and exploit drivers." ECF No. 38-1 at 1.

Without making any ruling on whether evidence pertaining to federal safety regulations might be generally relevant and admissible through another source, the Court finds that testimony on federal safety regulations is not within the purview of expert testimony. After all, it is "well established that the law is the exclusive domain of the judge and is not a proper subject for expert testimony." *United States ex rel. LaCorte v. Wyeth Pharms., Inc.*, 706 F. Supp. 3d 206, 239 (D. Mass. 2023). Although FedEx argues that Mr. Van Steenburg "does not interpret the FLSA or state wage and hour laws," ECF No. 38-1 at 10, in his report, Mr. Van Steenburg opines that "motor carriers like FedEx are bound" by said federal regulations and thus bear "responsibility for transportation safety and compliance issues," ECF No. 37-3 ¶ 9. The Court finds such expert testimony strays dangerously close to the application of the facts of this case to the law, which "fall[s] far outside the purview of expert testimony." *Wyeth Pharms., Inc.*, 706 F. Supp. 3d at 239. In recognizing its "broad discretion to exclude expert opinion evidence about the law that would impinge on the roles of the judge and the jury," the Court finds testimony regarding the effect of federal motor carrier safety regulations on FedEx is not admissible as expert testimony under Rule 702. *Pelletier v. Main St. Textiles, LP*, 470 F.3d 48, 55 (1st Cir. 2006) (affirming district court ruling excluding expert testimony and finding court "acted well within its discretion" to exclude testimony about application of federal OSHA regulations to defendant); *see Wyeth Pharms., Inc.*, 706 F. Supp. 3d at 240 ("The

witnesses go beyond their scope as experts when they testify about the satisfaction of the legal standards they set out.”).

### C. Testimony on the Norms of Motor Carrier Use of ISPs

For similar reasons, the Court finds expert testimony regarding the normative implications on the use of ISPs by motor carrier companies such as FedEx, specifically the economic considerations or effects of such agreements, are not relevant to the jury’s determination of whether FedEx is considered Mr. Eppich’s joint employer and thus liable for overtime wages under the FLSA. Put differently, the question of *why* FedEx entered into operating agreements with ISPs does not, at this juncture, appear relevant or helpful to the jury. *See, e.g.*, *Scovil v. FedEx Ground Package Sys. Inc.*, No. 10-cv-515, 2012 WL 10181062, at *1 (D. Me. Nov. 15, 2012) (granting motion to exclude expert testimony “as to why the defendant exerts control over its drivers” as well as “what safety regulations require and what other motor carriers do” as not relevant to determining whether plaintiff was considered employee in FLSA suit). In any event, even if such testimony were relevant, the Court finds it “is factual testimony that could be given by the defendant’s personnel,” thus obviating the need for expert testimony on the topic. *Id.*

## CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Mr. Eppich’s motion to exclude expert witnesses at trial. ECF No. 37. The Court **EXCLUDES** expert testimony relating to the nature of federal motor carrier safety regulations and their bearing on FedEx, as well as the economic considerations and implications of the operating agreements between FedEx and ISPs. Subject to further development before or at trial, the Court may **ALLOW** expert testimony on the structure and operation of ISPs and their relationship to motor carriers such as FedEx.

**SO ORDERED.**

Dated this 28th day of September, 2026.

/s/ Stacey D. Neumann
**UNITED STATES DISTRICT JUDGE**